UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTONIA CONSOLI,<br>    *Plaintiff,*<br>    *v.*<br>ST. MARY HOME/<br>MERCY COMMUNITY HEALTH,<br>    *Defendant*. | Civil No. 3:13cv1791 (JBA)<br><br>August 5, 2014 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Antonia Consoli ("Plaintiff") brings this employment discrimination claim against Defendant Saint Mary Home/Mercy Community Health ("Defendant") alleging discrimination (Count One) and retaliation (Count Two) on the basis of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. Plaintiff claims that she was subjected to a course of discriminatory treatment on the basis of her age, ultimately culminating in her termination. Defendant denies these allegations and argues that Plaintiff's age was not the "but for" cause of her termination. Defendant now moves [Doc. # 21] to dismiss both counts of Plaintiff's Amended Complaint [Doc. # 16], arguing (1) that the majority of Plaintiff's allegations are time-barred for failure to comply with the 300-day filing deadline with the Equal Employment Opportunity Commission (the "EEOC") and (2) that Plaintiff has failed to state a claim for which relief can be granted with respect to discrimination or retaliation. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

I.   **Background**

Plaintiff, who is currently sixty-five years old, was employed by Defendant as a certified nursing assistant ("CNA") from 1987 until September 14, 2012. (Am. Compl. ¶¶ 6–7.) Alourdes Innocent, who is in her late twenties, and Nana Rockson, who is in her

early thirties, were also employed by Defendant as CNAs. (*Id.* ¶¶ 9–10.) Plaintiff was one of the most senior CNAs working her shift, and had a history of receiving positive performance evaluations. (*Id.* ¶¶ 11–12.)

Sometime in 2011, one of Defendant's assistant administrators[1] denied Plaintiff overtime work, while offering all of Defendant's younger employees such overtime work. (*Id.* ¶ 13.) When Plaintiff inquired as to why she was not receiving the same opportunities for overtime as her younger colleagues, the assistant administrator responded that Plaintiff was "too old and a liability" and was "too old to be putting in overtime." (*Id.*) In mid-2011, Ms. Innocent approached Plaintiff and inquired about Plaintiff's age. (*Id.* ¶ 14.) Ms. Innocent began to make frequent comments to Plaintiff about her age, such as "you are old," "when are you going to retire," "you need to retire," "when are you going to let other people get a chance to work here," and "you need to make space for others." (*Id.*) Ms. Innocent also made comments to the effect that Plaintiff was rich enough not to work and that she should let others make some money. (*Id.*)

Plaintiff was upset by these comments and she would always respond to Ms. Innocent that she had no intention of retiring because she enjoyed her job. (*Id.* ¶ 15.) Plaintiff also verbally complained to her supervisor/charge nurse about Ms. Innocent's comments, indicating that she was upset at the way Ms. Innocent treated her based on her age. (*Id.* ¶ 16.) Despite these complaints, Ms. Innocent's comments continued up until Plaintiff's termination. (*Id.* ¶ 17.) Shortly after complaining, starting in August 2011, Plaintiff was subjected to a series of unwarranted and false disciplines. (*Id.* ¶¶ 18–19.)

---

[1] This assistant administrator is identified only as "Christopher" in the Amended Complaint. (Am. Compl. [Doc. # 16] ¶ 13.)

For example, in the six years prior to August 15, 2011, Plaintiff was issued various minor disciplines that all CNAs who worked for Defendant commonly received. (*Id.* ¶ 20.) However, after Plaintiff complained about Ms. Innocent's age-based comments, she was subjected to a course of frequent, more serious discipline that continued up until her termination. (*Id.* ¶ 21.)[2]

During Plaintiff's shift on August 26 to August 27, 2012 Plaintiff requested Ms. Rockson's assistance while she rolled over a resident in bed. (*Id.* ¶ 22.) While Plaintiff and Ms. Rockson were manipulating the resident, the siderail on Plaintiff's side of the bed snapped, causing the resident to fall on top of the siderail. (*Id.*) Plaintiff was suspended immediately after the incident. (*Id.* ¶ 25.) Defendant performed an investigation of the incident with Aysha Kuhlor (the Director of Clinical Services/Director of Nurses), Chena McPherson (the Assistant Director of Nurses), and Karen Landsberg (the Human Resources Director) taking statements from the employees who were involved. (*Id.* ¶ 23.) On August 28, 2012, Plaintiff and Ms. Rockson both gave statements as a part of the investigation, which were signed by management on August 29, 2012. (*Id.* ¶¶ 23–24.) In this initial statement, Ms. Rockson reported that she had been in the room with Plaintiff when the siderail snapped and the resident fell. (*Id.* ¶ 24.)

On September 6, 2012, Ms. Rockson approached Ms. Landsberg and told Ms. Landsberg that her original statement was untrue, that she was not present at the time of the incident, and that Plaintiff had been treating the resident alone when the resident fell. (*Id.* ¶ 26.) Ms. Rockson also claimed that Plaintiff had taken her aside and threatened her into fabricating her original statement. (*Id.* ¶ 26.) Ms. Rockson informed Ms. Landsberg

---

[2] Plaintiff does not specify in the Amended Complaint what type of discipline she was subjected to after reporting Ms. Innocent's comments.

3

that Plaintiff had threatened other employees in the past, including Ms. Innocent. (*Id.* ¶ 27.) On September 14, 2012, Plaintiff was informed that she had been terminated for giving false testimony during an investigation and for creating a hostile work environment by threatening and intimidating her fellow employees. (*Id.* ¶ 28.) Ms. Rockson was not disciplined for testifying falsely in her original statement. (*Id.* ¶ 29.) Ms. Rockson had previously been investigated with another employee and had changed her story on that occasion as well, leading to unwarranted discipline of her coworker. (*Id.* ¶ 30.) Just prior to Plaintiff's termination, an elderly employee who had been employed by Defendant for over thirty-five years was also terminated under suspicious circumstances. (*Id.* ¶ 31.) Both Plaintiff and this other senior employee were replaced by younger employees. (*Id.*)

On May 6, 2013, Plaintiff jointly filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") and the EEOC. (*Id.* ¶ 5; *see also* EEOC Compl., Ex. A to Def.'s Mem. Supp.)[3] Plaintiff received her right-to-sue letter from the EEOC on November 25, 2013, and commenced this action within ninety days of receiving that letter. (*Id.*)

---

[3] Although Plaintiff did not attach her EEOC complaint to her Amended Complaint, it is incorporated by reference, and thus the Court may consider it in ruling on the motion to dismiss.

II.     **Discussion**[4]

Defendants move to dismiss Plaintiff's Amended Complaint in its entirety, arguing that the majority of Plaintiff's allegations are untimely and that even if these allegations were timely, Plaintiff still would fail to state a claim for either age-based discrimination or retaliation.

A.     **Time-Barred Allegations**

Defendant argues that the majority of Plaintiff's allegations of age discrimination occurred more than 300 days before her EEOC complaint was filed, and that they are therefore time-barred for the purposes of this action. "An aggrieved employee claiming retaliation [or discrimination] must file a charge with the EEOC no later than 180 or 300 days after the alleged adverse act occurs, the exact timing dependent on whether a state has its own agency with authority to investigate the claim." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005); *see also* 29 U.S.C. § 626(d)(1). Here, Plaintiff jointly filed her administrative complaint with both the CHRO and the EEOC, and thus the 300-day limitations period applies. *Jute*, 420 F.3d at 176; *see also* 29 U.S.C. § 626(d)(1)(B). Specifically, Plaintiff filed her EEOC complaint on May 6, 2013, and thus any allegations dating from on or before July 10, 2012 would be considered untimely under the ADEA. The parties do not dispute that Plaintiff's allegations with respect to her termination are timely. However, in the Amended Complaint, Plaintiff alleges the denial of overtime, age-based comments, and subsequent retaliation beginning sometime

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

in 2011, and thus these allegations of discrimination and retaliation are outside the limitations period.

In her briefing, Plaintiff argues that the Court may nonetheless consider these allegations under the "continuing violation doctrine." "[U]nder the continuing violation exception to the [ADEA] limitations period, if a[n ADEA] plaintiff files an EEOC charge that is timely as to any incident of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 155–56 (2d Cir. 2012). In *Morgan v. Nat'l R.R. Passenger Corp.*, 536 U.S. 101 (2002), the Supreme Court limited the application of this doctrine. *See Chin*, 685 F.3d at 156 (noting application of *Morgan* to the continuing violation doctrine). In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.*[5]

---

[5] The Supreme Court further held that hostile work environment claims were different in kind from discrete retaliation or discrimination claims, and thus "it does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. However, Plaintiff's counsel acknowledged at oral argument that the Amended Complaint makes no reference to a hostile work environment claim.

Plaintiff claims in her briefing that her pre-2012 allegations constitute a pattern and practice of discrimination, rather than a series of discrete acts and that therefore the continuing violation doctrine applies to her claims.  Plaintiff has alleged generally that she was denied overtime on the basis of her age, and that when she complained about her colleague's age-related comments, she was subjected to a series of false disciplines on the basis of her age and in retaliation for her complaints.  Courts in this Circuit have recognized that disparate discipline and failure to award overtime are discrete discriminatory acts, which trigger a new 300-day limitations period each time they occur.  *See Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) ("Valtchev ultimately raises only failure to promote claims, and discrete instances of retaliatory action, such as negative evaluations, that do not trigger the continuing violation exception."); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 134–35 (E.D.N.Y. 2013) ("Plaintiff alleges that Hispanic officers were routinely denied promotions, subjected to disparate discipline, and denied transfer opportunities.  These are all discrete acts of discrimination and each incident constitutes a separate actionable unlawful employment practice.  Each incident is only actionable if it occurred within the 300-day time period." (internal citations and quotation marks omitted)); *Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007) ("Each denial of overtime was a discrete act that is now time-barred.").

Plaintiff argues in her briefing that the continuing violation doctrine should still apply because these actions were conducted pursuant to Defendant's general policy of age discrimination.  However, the Second Circuit has recognized that "discrete acts [that] fall outside the limitations period[] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the

7

limitations period." *Chin*, 685 F.3d at 157. Thus, because Plaintiff has done no more than allege a series of discrete discriminatory acts occurring outside the 300-day time period, the allegations related to the "false disciplines" and denial of overtime are time-barred and are not individually actionable.

However, this does not bar the Court from considering these incidents as relevant background to Plaintiff's timely-filed claims related to her termination, provided her termination was independently discriminatory. *Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior background evidence in support of a timely claim."); *Chin*, 685 F.3d at 150 ("It is well established, however, that so long as at least one alleged adverse employment action occurred within the applicable filing periods, evidence of an earlier alleged retaliatory act may constitute relevant background evidence in support of that timely claim. Such background evidence may be considered to assess liability on the timely alleged act." (internal citations and quotation marks omitted)); *Jute*, 420 F.3d at 176–77 ("Hence relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to asses liability on the timely alleged act."). In her complaint, Plaintiff alleges that a younger employee was not disciplined in relation to the incident for which Defendant claims Plaintiff was terminated, even though she had admitted to lying during the investigation. Plaintiff further claims that another senior employee was fired under similarly suspicious circumstances around the same time as Plaintiff's termination, and that they were both replaced by younger employees. Thus, Plaintiff has alleged current facts that could support an inference that her termination was discriminatory. Therefore, although the Court concludes that Plaintiff's pre-2012 allegations are not independently actionable because they are time-barred, and Defendant's motion to dismiss is granted

with respect to these claims, the Court will nonetheless consider Plaintiff's time-barred allegations as background evidence in support of her timely termination claims.

### B. Failure to State a Claim

Defendant further argues that Plaintiff has failed to allege sufficient facts to state a prima facie case of either discrimination or retaliation. Specifically Defendant argues that Plaintiff has failed to allege sufficient facts to show that her age was the "but-for" cause of her termination, or to show that the decision-makers who terminated her employment were aware of her prior complaints. Plaintiff's only objection to this argument is that she is not required to satisfy the *McDonnell Douglas* test at the pleading stage, relying on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002), in which the Supreme Court held that "[t]he prima facie case under *McDonnel Douglas* . . . is an evidentiary standard, not a pleading requirement. . . . [I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case . . . . Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." The continued vitality of *Swierkiewicz* may be called into doubt by the Supreme Court's subsequent holdings in *Twombly* and *Iqbal*, *see Caseky v. County of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014), although the *Twombly* Court stated specifically that its holding did not run counter to *Swierkiewicz*, *see* 550 U.S. at 570. In an attempt to reconcile *Swierkiewicz*, *Twombly*, and *Iqbal*, courts in this Circuit have generally held that a plaintiff "need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners*, 716 F. Supp. 210, 215 (S.D.N.Y. 2010). Courts have further held that a court "may consider the elements of a prima facie case in determining

whether there is sufficient factual matter in the complaint to give such notice to defendants." *Williams v. Wellness Medical Care, P.C.*, No. 11-CV-5566 (KMK), 2013 WL 5420985, at *3 (S.D.N.Y. Sept. 27, 2013).

### 1. Age Discrimination

In order to establish a prima facie case of age discrimination, Plaintiff must establish "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced [an] adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Defendant argues that Plaintiff has failed to allege sufficient facts to give rise to an inference of but-for age discrimination. The gravamen of Defendant's argument is that it is apparent from the face of Plaintiff's Amended Complaint that she was terminated because of her negligent patient care, and not because of her age. However, such arguments ignore the requirement that the Court must accept as true the facts alleged in the Amended Complaint for the purposes of this motion to dismiss. Plaintiff denies that she engaged in negligent treatment. Rather, she alleges that the bed siderail gave way, that a co-worker recanted her story with respect to the incident in question, and that when faced with the competing accounts, Defendant chose to fire the older employee, while the younger employee, who had admitted to giving a false statement, was not disciplined. Plaintiff has further alleged that another employee in the protected age group was fired under similar circumstances, and that they were both replaced with younger employees. These allegations, when considered together with the background evidence that Plaintiff had been subjected to repeated age-based comments, and that when she had complained about the comments she was quickly subjected to an escalating series of unwarranted

10

disciplines, are minimally sufficient to plausibly give rise to an inference of discrimination and to give Defendant notice of the basis for Plaintiff's age discrimination claim.

With respect to Defendant's arguments regarding the "but-for" cause of Plaintiff's termination, the "but-for" standard necessarily implicates the weight of the evidence, and is a question best left for analysis after the development of a full factual record. *See Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 495, 497 (E.D.N.Y. 2011) ("Accordingly, the Plaintiffs were not required to plead that age discrimination was the 'but for' cause of their termination. . . . Ultimately, all that is required at this stage of the proceedings is that the complaint contain sufficient facts to make plausible the conclusion that but for their age the Plaintiffs would still be employed." (internal citations and quotation marks omitted)). Here, Plaintiff has alleged that where two employees gave conflicting testimony with respect to an accident involving a resident, Defendant chose to fire the older employee, without disciplining the younger one. Combined with the background allegations of specific age-based animus, these facts are sufficient to give rise to an inference that Plaintiff would not have been terminated if she had not been a member of the protected age group. Therefore Defendant's motion to dismiss is denied with respect to Count One.

        2.     *Retaliation*

In order to establish a prima facie case of retaliation under the ADEA, Plaintiff must show that (1) she engaged in protected activity under the ADEA, (2) that Defendant was aware of this activity, (3) that Defendant took adverse action against Plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006).

Defendant argues that Plaintiff has failed to allege sufficient facts to establish that Defendant was aware of her complaints or that there was a causal connection between her complaints about the age-related comments and her termination. In her Amended Complaint, Plaintiff alleges that she reported Ms. Innocent's age-based comments to her supervisor and/or her charge nurse. Defendant argues that this allegation does not give rise to an inference that Defendant was aware of her complaints, because it is not clear that the decision-makers involved in her termination were aware of these complaints. In support of this argument, Defendant cites a District of Connecticut case, that was decided on summary judgment, in which the court concluded that because Plaintiff could not show that the individuals who chose the plaintiff for a reduction in force knew who he was or knew about his prior worker's compensation claim, Plaintiff could not establish that there was a causal connection between his termination and his claim. *Tejada v. Wal-Mart Stores, Inc.*, Civil No. 3:06cv02049 (AWT), 2009 WL 839020, at *7 (D. Conn. Mar. 30, 2009). Here, however, Plaintiff has alleged that she complained to supervisory employees about Ms. Innocent's offensive comments. It is not clear from Plaintiff's complaint exactly who was involved in the decision to fire her, but this is information that would be uniquely in Defendant's possession, and at this stage, Plaintiff's allegation that a supervisor was informed gives rise to a plausible inference that Defendant had knowledge of the complaint. Furthermore, although Plaintiff alleges that the retaliatory discipline began in August 2011, which is more than a year before Plaintiff's termination, she further alleges that she was subjected to an escalating course of discipline that culminated in her termination. Such allegations may support an inference that Defendant had begun to build a case for Plaintiff's termination shortly after her complaint and continuing up until her termination. Therefore, she has alleged minimally

sufficient facts to support an inference of retaliatory intent. Defendant's motion to dismiss is thus denied with respect to Count Two.

### III.     Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 21] to Dismiss is GRANTED in that Plaintiff may pursue her discrimination and retaliation claims only as they relate to her termination, and DENIED in all other respects.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of August, 2014.